IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEPHEN WALKER, R49619, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| DARREN GALLOWAY, MARCUS MARVIN, LARESHA REED, JAMES VAUGHN, LANE, SMALLS, WALKER, JOHN DOE 2, JANE DOE 1, JANE DOE 2, JANE DOE 3, JOHN/JANE DOE MED. ADMIN.,[1] | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

Case No. 25-234-DWD

# **MEMORANDUM & ORDER**

**DUGAN, District Judge:**

Plaintiff Stephen Walker, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Lawrence Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Shawnee Correctional Center (Shawnee). Specifically, Plaintiff alleges staff failed to protect him from Defendant Vaughn, used excessive force against him, denied him

---

[1] In the caption on page 1 of the complaint, Plaintiff listed Brian Banks, Nurse Jane Doe Vicky, and Nurse Jane Doe Ms. K. (Doc. 1 at 1). By contrast, in his extended listing of defendants from pages 2-4, he left out Brian Banks, and he crossed out Vicky and Ms. K and generically listed three Jane Does. (Doc. 1 at 2-4).

medical treatment, and retaliated against him, among other things. He seeks injunctive and monetary relief.

The Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

On September 10, 2024, as Defendant Lane escorted Plaintiff to take a shower in the segregation building, Defendant Vaughn began to make harassing remarks to Plaintiff. (Doc. 1 at 4-5). Vaughn and Plaintiff had a history of negative interactions, about which Plaintiff had previously complained more than a year prior to internal affairs staff. Plaintiff alleges Vaughn had also made threats to seriously injure him in June of 2024. During the September 10th encounter on the way to the shower, Vaughn was belittling Plaintiff for reporting their past disagreements to internal affairs. At the time of the incident, Plaintiff was handcuffed. At the shower area he pivoted to view Vaughn's badge, at which point Vaughn spit in Plaintiff's face and eye. (Doc. 1 at 5-6). Plaintiff claims that he reflexively swung his laundry bag and struck Vaughn's head. (Doc. 1 at

6). He claims when he heard an alarm sound for a staff assault, he immediately "surrendered."

Defendants Smalls, Walker, John Doe 1 and John Doe 2 responded, and these four plus Lane began to attack and assault Plaintiff even though he was handcuffed at the time and had already surrendered. (Doc. 1 at 6). He claims the officers finished the assault and then escorted him back to his cell. He claims he immediately alerted Jane Doe 1 to a burning sensation in his eye as well as serious back and shoulder pain, but she did nothing. (Doc. 1 at 7). Somehow Plaintiff learned his shoulder was dislocated, and he began to submit written requests for medical care. He claims that on September 11, 2024, Jane Doe 2 refused to render care. (Doc. 1 at 7). On September 12, Jane Doe 3 received his request for care and refused care. (Doc. 1 at 7).

Plaintiff received a disciplinary ticket related to the incident, and he was brought before the Adjustment Committee on September 17, 2024. He claims Defendants Martin and Reed refused to properly investigate, and they made derogatory statements to him related to the alleged staff assault on Vaughn. He asked them for medical care, and they refused. (Doc. 1 at 8). As a result of the disciplinary ticket, Plaintiff received 3 months of C-grade, 3 months of segregation, 6 months of contact visit restrictions, and a disciplinary transfer. (Doc. 1 at 8). On September 18, 2024, he was transferred from Shawnee to Lawrence. He faults Defendant Galloway for concurring with the disciplinary outcome on October 1, 2024. (Doc. 1 at 8).

On November 27, 2024, he claims Defendant Banks "filed" criminal charges against him related to his alleged assault of a peace officer. He claims that Galloway and

Banks initiated the criminal charges as an act of retaliation for complaints and grievances he had previously filed. (Doc. 1 at 9).

Plaintiff designated three "counts" for relief under the First Amendment (retaliation), the Eighth Amendment (cruel and unusual punishment) and the Fourteenth Amendment (Due process). (Doc. 1 at 10-13). Within each enumerated count, he identified many sub-theories against individuals or groups of Defendants.

Based on the allegations in the Complaint the Court designates the following counts:

> **Claim 1:** **First Amendment retaliation claim against Defendants Galloway, Marvin, and Reed for effectuating an alleged retaliatory transfer from Shawnee to Lawrence related to Plaintiff's filing of complaints and grievances;**
>
> **Claim 2:** **First Amendment retaliation claim against Defendants Galloway and Banks for initiating criminal assault charges against Plaintiff in response to his filing grievances and complaints;**
>
> **Claim 3:** **First Amendment retaliation or Eighth Amendment cruel and unusual punishment claim against Defendant Vaughn for harassing, threatening, and spitting on Plaintiff in response to his previous complaints about Vaughn's conduct towards him;**
>
> **Claim 4:** **Eighth Amendment cruel and unusual punishment claim against Defendants Galloway, Marvin and Reed for failing to act on information that unconstitutional conduct was occurring;**
>
> **Claim 5:** **Eighth Amendment excessive force claim against Defendants Lane, Smalls, Walker, John Doe 1 and John Doe 2 for allegedly attacking him while handcuffed and subdued on September 10, 2024;**

| | |
|---|---|
| Claim 6: | Eighth Amendment deliberate indifference to serious medical needs against Defendants Nurse Vicky, Nurse Ms. K, Jane Doe 1, Jane Doe 2, and Jane Doe 3 for allegedly denying Plaintiff medical care after the assault; |
| Claim 7: | Eighth Amendment claim against Defendants Galloway and John/Jane Doe medical administrator for negligent supervision of subordinates whose actions are described in the complaint; |
| Claim 8: | Eighth Amendment deliberate indifference claim against Defendants Galloway and John/Jane Doe medical administrator for allowing Plaintiff to be transferred while suffering severe pain on September 18, 2024; |
| Claim 9: | Fourteenth Amendment due process claim against Defendants Galloway, Marvin, and Reed for depriving Plaintiff of procedural protections during his disciplinary proceedings that led to his transfer; |
| Claim 10: | Fourteenth Amendment failure to intervene claim against Defendants Lane, Smalls, Walker, John Doe 1, John Doe 2, and Vaughn for failing to intervene while Plaintiff was being attacked on September 10, 2024. |

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

PRELIMINARY DISMISSALS

Plaintiff named "Jane Doe Nurse Vicky" and "Jane Doe Nurse K" as defendants in his master caption on the first page of the complaint, but he made no mention of these

individuals in the factual narrative. A plaintiff has failed to plead a sufficient claim if he names someone in the case caption but does not describe in the body of the complaint what that person did that caused him harm. *See*, Black v. Lane, 22 F.3d 1395, 1401 n.8 (7th Cir. 1994) (merely naming a defendant without describing his or her personal role is insufficient to state a claim). Section 1983 liability requires a showing that each individual defendant had a personal responsibility for the harm alleged. Plaintiff cannot meet this standard as pled, so he does not have a sufficient claim against Defendants Nurse Vicky or Nurse Ms. K and these two defendants will be dismissed without prejudice.

Plaintiff also included allegations under the Fourteenth Amendment against several defendants that were duplicative of his more specific claims under the Eighth Amendment. To the extent that Plaintiff listed defendants in his Fourteenth Amendment claim, but the Court did not break out claims against them in the designation of claims, those additional theories are dismissed as redundant of the more specific claims.

## DISCUSSION

### Claim 1

Plaintiff alleges that Defendants Galloway, Marvin, and Reed retaliated against him for filing complaints and grievances by transferring him to Lawrence. He attached the disciplinary ticket that he received for allegedly striking Defendant Vaughn, and the ticket reflects that he received a disciplinary transfer from the adjustment committee for striking Vaughn. (Doc. 1 at 19-20). To prevail on a First Amendment retaliation claim, Plaintiff must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment

activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in defendant's decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Plaintiff alleges in his complaint that prior to the September 10 event with Vaughn, he had filed grievances and lodged complaints with prison administrators about prior harassment from Vaughn. Vaughn mentioned his complaints to internal affairs during the September 10 encounter. Thus, Plaintiff seems to surmise that the discipline he got was further retaliation for his protected activity of complaining to prison staff that Vaughn had harassed him in the past.

This theory has a major flaw. Plaintiff admitted in the complaint that he struck Vaughn in the head with his laundry bag. The basis for his discipline was that he struck Vaughn. An inmate cannot maintain a retaliation claim if prison officials demonstrate that there was a legitimate basis for discipline imposed. *See e.g.*, *Harris v. Walls*, 604 Fed. App'x 518, 521 (7th Cir. 2015) ("a prisoner who has evidence that officials were motivated to discipline the prisoner because of protected speech cannot prevail if officials show, without contradiction, that they would have disciplined him anyway for a legitimate reason."). Here, Plaintiff was legitimately disciplined for striking Vaughn, so he cannot pursue a retaliation claim against Galloway, Reed, or Marvin related to the discipline. Claim 1 is dismissed without prejudice.

**Claim 2**

Plaintiff alleges that Defendants Galloway and Banks played a role in securing criminal charges against him related to striking Vaughn. In support of this theory, he attached a statement of probable cause that Banks submitted in state court attesting that

Plaintiff struck Vaughn in the head. He claims Galloway and Banks' actions amounted to retaliation. Plaintiff's assertions are pure speculation. He has no factual allegations that make a connection between any prior grievances or complaints he lodged about Vaughn, and Banks and Galloway's alleged role in facilitating criminal charges against him. Even if he could draw such a link, a review of the publicly accessible docket sheet for the state court criminal case reflects that the case is still pending.[2] To the extent he is trying to use a retaliation claim in this case to attack the validity of those proceedings, he cannot do so because this Court will not interfere in pending state court proceedings. *See e.g., Younger v. Harris*, 401 U.S. 37 (1971); *J.B. v. Woodard*, 997 F.3d 714, 722 (7th Cir. 2021) (a federal court should not intervene with ongoing state criminal proceedings under Younger abstention). Thus, Claim 2 is dismissed without prejudice.

**Claim 3**

In Claim 3, Plaintiff alleges that Defendant Vaughn retaliated against him on September 10, 2024, when he engaged in verbal harassment towards Plaintiff about his complaints to internal affairs, and when he spit on Plaintiff during the encounter. These allegations are sufficient to proceed at this preliminary juncture because Plaintiff has alleged that Vaughn was hostile and threatening towards him, and physically spit on him while making comments about Plaintiff's discussions with internal affairs related to Plaintiff's concerns about his safety around Vaughn. However, it is important to note that during the encounter, it sounds as if Plaintiff and Vaughn both exchanged remarks.

---

[2] Johnson County docket sheet accessed for case State v. Stephen Walker, 2024-CF-84, lasted accessed at https://www.judici.com/courts/cases/case_search.jsp?court=IL044015J on April 8, 2025.

To the extent that Plaintiff engaged in backtalk or disruptive language, this may undermine any potential retaliation claim.  *See e.g.*, *Kervin v. Barnes*, 787 F.3d 833, 834-35 (7th Cir. 2015) (backtalk is not constitutionally protected speech).

Plaintiff also complains that Vaughn's activity amounted to cruel and unusual punishment under the Eighth Amendment, or more generally that his conducted violated the Fourteenth Amendment.  While most verbal harassment is not sufficient to make out an Eighth Amendment claim, Plaintiff claims that Vaughn had a history of harassing him, that Vaughn had threatened great bodily harm in June of 2024, and that on September 10, 2024, Vaughn's verbal conduct was accompanied by spitting in his face.  It is feasible that this could make out a claim related to the verbal harassment, or at least that intentionally spitting in an inmate's face may violate the Eighth Amendment's prohibition on cruel and unusual conduct.  As such, Claim 3 may proceed against Vaughn under the First and Eighth Amendments.  The Fourteenth Amendment assertion is generalized and the more specific theories of the First and Eighth Amendment take precedence.

**Claim 4**

Plaintiff faults Defendants Galloway, Marvin and Reed for failing to protect him from cruel and unusual punishment by "failing to act on information indicating that unconstitutional acts were occurring."  It is unclear if he means that they failed to protect him from the September 10th encounter based on his prior complaints about Vaughn, or if he is more simply stating that when they learned of September 10th encounter he had with Vaughn during the disciplinary proceedings that something more should have been done.  There are insufficiently detailed allegations to suggest prior to September 10th that

they knew of a discrete risk of harm likely to materialize between Vaughn and Plaintiff, because Plaintiff does not say anything about what transpired that would have given them prior knowledge of a specific risk. To the extent he claims they failed to take adequate remedial action after the fact, there is no constitutionally rooted mandate that prison supervisors take a specific set of steps when they learn of an issue between staff and an inmate. What is more, Plaintiff was transferred out of Shawnee a day after the disciplinary hearings, so it is not clear at that point what more could have been done about the incident with Vaughn. Claim 4 is dismissed as insufficiently pled.

**Claim 5**

Plaintiff alleges that after striking Vaughn he immediately relented and was subdued. He alleges that despite the fact that he was under control, Defendants Lane, Smalls, Walker, Doe 1 and Doe 2 attacked him while he was handcuffed in an unnecessary and gratuitous fashion. An Eighth Amendment excessive force claim requires an inquiry into "whether force was applied in a good-faith effort to maintain or restore discipline, or [whether it was] applied maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The "core judicial inquiry" for an excessive force claim not the severity of the injury, but whether the force used was 'malicious and sadistic.' *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Here, Plaintiff contends the Defendants used more force than was necessary and attacked him while he was restrained. These allegations are sufficient at this juncture to proceed against Defendants Lane, Smalls, Walker, John Doe 1 and John Doe 2.

**Claim 6**

Plaintiff alleges that Jane Does 1, 2, and 3 saw him the day of the assault and the two days after the assault, but they all refused care and did not act on his written requests for care.  He claims that he informed Jane Doe 1 of a burning sensation in his eye and serious pain in his shoulder and wrist.  He also alleges he eventually discovered that he had a dislocated shoulder, which he attributes to the September 10th altercation.  These assertions are sufficient for him to proceed against Jane Does 1, 2, and 3 for their alleged denial of any medical assistance on September 10, 11, and 12, 2024.

**Claim 7**

Plaintiff faults Warden Galloway and John/Jane Doe medical administrator for failing to supervise their subordinates in relation to the underlying events of the complaint.  There is no respondeat superior liability under § 1983, so Galloway and the medical administrator cannot be held liable purely for the actions of their subordinates.  Claim 7 is dismissed as insufficient.

**Claim 8**

In Claim 8, Plaintiff faults Galloway and the medical administrator for allowing his transfer on September 18, 2024, despite knowing he was suffering from serious injuries.  Plaintiff does not provide any assertions that attribute personal knowledge to Galloway or the administrator of his injuries, nor does he have any assertions that tend to suggest they believed a transfer may exacerbate any injuries.  As such, his allegations are insufficient to suggest these two officials were personally deliberately indifferent to a serious medical condition or injury that he faced.

**Claim 9**

Plaintiff faults Defendants Galloway, Marvin and Reed for violating his right to Due Process via their conduct and lack of investigation during his disciplinary proceedings. He argues that under prison rules, they should have done more to investigate the situation before reaching the conclusion that he was guilty of the offense alleged. He received 3-months in segregation, 3-months of C-grade, 6 months of contact visit restrictions, and a disciplinary transfer.

To establish a due process claim related to disciplinary proceedings, an inmate must demonstrate: (1) the deprivation of a liberty interest; and (2) the procedures he was afforded were constitutionally deficient. *Lisle v. Welborn*, 933 F.3d 705, 720 (7th Cir. 2019). Six months in segregation and six months' loss or restriction of privileges—do not, without more, implicate a protected liberty interest. *See Hardaway v. Meyerhoff*, 734 F.3d 740, 744 (7th Cir. 2013) (six-month disciplinary segregation alone); *Lekas v. Briley*, 405 F.3d 602, 605, 613 (7th Cir. 2005) (temporary loss of contact visitation and restricted commissary); *Whitford v. Boglino*, 63 F.3d 527, 533 n.7 (7th Cir. 1995) (six-month disciplinary segregation and demotion to C grade). A plaintiff may also argue that the combination of disciplinary measures deprived him of a protected liberty interest. *See Kervin v. Barnes*, 787 F.3d 833, 836 (7th Cir. 2015). There is no bright-line rule for the duration or conditions of segregation that might invoke a protected liberty interest, but generally a term of segregation approaching or exceeding a year may be considered significant enough to invoke due process protections. *See e.g., Marion v. Columbia Correction Inst.*, 559 F.3d 693, 698 (7th Cir. 2009) (finding that a term of 240-days of

segregation was long enough to mandate an inquiry into the conditions of the confinement). However, the imposition of disciplinary segregation without "additional facts about the conditions of confinement, [does] not implicate a liberty interest." *Miller v. Maue*, 759 F. App'x 515, 516 (7th Cir. 2019).

Additionally, in a situation where an inmate complains of discipline such as segregation, or anything other than the loss of good-time credit, the disciplinary proceedings are subject to an informal due process inquiry. Informal due process requires only that an inmate is provided (1) notice of the reasons for his placement in segregation, (2) and an opportunity to present his views in a written statement or hearing. *Ealy v. Watson*, 109 F.4th 958, 965 (7th Cir. 2024).

Here, Plaintiff does not provide any factual allegations describing the conditions of his segregation, and his stay in segregation was relatively short at just three months. Without information about the conditions, the short disciplinary term does not implicate a protected liberty interest. Even if Plaintiff did provide facts that suggested a liberty interest was implicated, he does not argue he lacked notice of the reasons for his placement in segregation, nor does he claim he was unable to present his views at the disciplinary hearing. To the extent he complains that he was transferred as part of his discipline, he also does not explain how the conditions at Lawrence are materially different from Shawnee, and he does not have a protected interest in housing at any particular prison. *See e.g.*, *Hoskins v. Lenear*, 395 F.3d 372, 374-75 (7th Cir. 2005) (determining that a prisoner was not entitled to due process protections where he got two months of segregation and was transferred to another prison). As such, he does not have

a valid Due Process claim against Galloway, Marvin, or Reed for their involvement in the alleged discipline.

To the extent Plaintiff separately argues that Marvin and Reed failed to follow procedures in the Illinois Administrative Code, violations of state law or prison policies do not equate to constitutional violations sufficient for a claim under § 1983. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (observing that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws").

**Claim 10**

Finally, Plaintiff faults Defendants Lane, Walker, Smalls, John Doe 1, John Doe 2, and Vaughn for failing to intervene on September 10, 2024, while he was being attacked. He cast this claim under the Fourteenth Amendment, but it more closely aligns with an Eighth Amendment theory of failure to intervene. An officer who fails to intervene to prevent known cruel or unusual force, despite a reasonable opportunity to intervene, may be held liable under § 1983. *Wilborn v. Ealy*, 881 F.3d 998, 1007 (7th Cir. 2018). For now, Plaintiff may proceed on Claim 10.

## Disposition

**IT IS HEREBY ORDERED THAT Claim 3** survives against Defendant Vaughn, **Claim 5** survives against Defendants Lane, Smalls, Walker, and John Does 1 and 2, **Claim 6** survives against Jane Does 1, 2 and 3, and **Claim 10** survives against Defendants Lane, Smalls, Walker, John Doe 1, John Doe 2 and Vaughn. The Warden of Shawnee (Darren Galloway) shall remain in this case in his official capacity only to help identify John Does 1 and 2, and Jane Does 1, 2 and 3.

**Plaintiff must file a notice with the Court within 30 days** describing John Does 1 and 2 and Jane Does 1, 2 and 3 with as much detail as possible, such as with nicknames and physical appearance. If he does not file this notice, these defendants will be dismissed. If he files the notice, the Court will direct the Warden of Shawnee to provide responsive information.

By contrast, **Claims 1, 2, 4, 7, 8, and 9** are all insufficient to state a claim. Plaintiff has failed to state a sufficient claim against Defendants Marcus Marvin, Laresha Reed, Brian Banks, John/Jane Doe Medical Administrator, Nurse Ms. K, and Nurse Vicky. He has also failed to state an individual capacity claim against Galloway, and Galloway shall be dismissed from this suit for failure to state a claim after John Doe identification is done. The Clerk of Court is **DIRECTED** to **TERMINATE** Defendants Marcus Marvin, Laresha Reed, Brian Banks, Nurse Ms. K, John/Jane Doe Medical Administrator, and Nurse Vicky.

The Clerk of Court is **DIRECTED** to prepare for Defendants Vaughn, Lane, Smalls, Walker, and Warden of Shawnee--Galloway (official capacity for John Doe identification): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service

on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).  Pursuant to Administrative Order No. 244, Defendant need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted.  See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 14 days after a transfer or other change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

**IT IS SO ORDERED.**

**DATED: April 14, 2025**

*s/ David W. Dugan*
DAVID W. DUGAN
United States District Judge

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.